**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY TOWNSEND as father and next friend of Z.T., a minor, ) ) ) | |
| Plaintiff, ) ) | Case No. 19 CV 6472 |
| vs. ) ) ) | Judge Harry D. Leinenweber |
| CONCEPT SCHOOLS NFP, D/B/A HORIZON SCIENCE ACADEMY MCKINLEY PARK CHARTER SCHOOL, KALE GRAHAM and SARAH KRIPPINGER , ) ) ) ) ) | JURY DEMAND |

Defendants.

## FIRST AMENDED CIVIL COMPLAINT

**NOW COMES** the Plaintiff, Anthony Townsend, as father and next friend of Z.T., a minor, through his counsel Erickson & Oppenheimer, Ltd., complaining against the Defendants, Concept Schools NFP, Kale Graham, and Sarah Krippinger, as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988; 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States, Title II of the Americans with Disabilities Act (ADA), §504 of the Rehabilitation Act, and pendent jurisdiction as provided under 28 U.S.C. § 1367(a).

2. Venue is proper under 28 U.S.C. Section 1391(b). All of the parties reside in this judicial district and the events described herein all occurred within this district.

### THE PARTIES

3. Z.T. is a minor who, at all relevant times, was a 7-year-old boy attending Horizon Science Academy McKinley Park Charter School as a second-grade student in Defendant Krippinger's classroom. Z.T. was the only African-American student in his class. Prior to being Krippinger's student, he had no documented behavioral issues. He excelled so much in

certain subjects that during math lessons, he was relocated from the rest of the class and instructed in geometry.

4. Z.T. has special needs as he suffers with a fine motor skill disorder in a manner consistent with fine motor dysgraphia. These challenges affect his handwriting and word spacing, make his written product difficult to read at times, and severely limited his ability to communicate well in writing. As a result of these challenges, Z.T. also has trouble with tasks such as tying his shoes, zipping/unzipping zippers or doing/undoing his buttons.

5. Defendant Krippinger regarded Z.T. as having a disability and perceived him to be a child with learning issues.

6. Plaintiff is the father of Z.T.

7. Defendant Concept Schools is a not for profit corporation, duly incorporated under the laws of the State of Illinois and doing business in the City of Chicago, County of Cook, State of Illinois through various schools under the Horizon name, including Horizon Science Academy McKinley Park Charter School.

8. Horizon Science Academy McKinley Park Charter School is a public school and receives public funding. At all times relevant to this Complaint, Horizon Science Academy McKinley Park Charter School operated on property located at 2245 W. Pershing Rd., Chicago, IL.

9. At all times relevant to this complaint, Defendant Sarah Krippinger was a Caucasian female employed by Concept Schools NFP as Z.T.'s second grade teacher at Horizon Science Academy McKinley Park Charter School. At all relevant times, Defendant Krippinger was acting within her scope of employment and under color of law.

10. At all times relevant to this complaint, Defendant Kale Graham was a Caucasian male employed by Concept Schools NFP as Z.T.'s physical education teacher at Horizon Science Academy McKinley Park Charter School. At all relevant times, Defendant Graham was acting within his scope of employment and under color of law.

11. At all times relevant to this complaint, Defendants Krippinger and Graham were romantically involved.

## FACTS PERTAINING TO KRIPPINGER

12. From approximately April 2019 to June 2019, Defendant Krippinger abused, ostracized, isolated, and bullied Z.T. Her personal animus against him stemmed from his race and/or his disability.

13. For a full three-month period and until discovered by Z.T.'s father, Krippinger cruelly forced Z.T. to sit alone, staring a dull wall, at an isolated desk that was crammed between a file cabinet and row of lockers in a rear corner of the classroom. Z.T. was forced to sit with his back to the rest of the class who sat grouped together at stations consisting of four desks pushed up against each other.

14. Each group of desks had a caddy full of school supplies that belonged to the school such as markers, glue, and scissors that were used throughout the day for classwork. Each group of desks had a different color caddy and each group of students were referred to as a team based upon the color of their caddy (i.e. "blue team", "green team", etc.).

15. Z.T. was not only physically isolated from his classmates as described above, he was not allowed by Krippinger to be part of any team in the class. He was not given a caddy with any school supplies, but was rather only given a pencil holder to keep his pencil in place.

16. Krippinger's segregation of Z.T. and her refusal to allow him the same access to school supplies was based on Z.T.'s race and/or disability.

17. Due to Krippinger's forced isolation of Z.T. and her refusal to permit him access to the same school supplies as other students, Z.T. was constantly forced to go to each grouping of desks and beg for supplies needed for school assignments, particularly for activities done during art and indoor recess. Often times, having seen Krippinger's treatment of Z.T., his classmates joined in and likewise refused him access to the requested supplies. Having access

to items such as writing tools and scissors is particularly important for children with dysgraphia as the use of these tools helps to enhance their fine motor skills.

18. Due to Z.T.'s constant begging for classroom supplies, classmates that were friends with Z.T. stopped being his friend as they made comments about how he was constantly begging for supplies and being annoying.

19. Z.T. tried desperately to stop Krippinger's mistreatment of him, writing notes on his spelling test to her pleading with her to "become nice", "are you sure your [sic] nice" and "your [sic] not my friend." He also drew a circle and inside wrote a message stating "place sticker here", expecting a "good job sticker" for knowing every word on the spelling test. Krippinger's only response was a message stating "maybe we should try this one again."

20. On or about May 30, 2019, Plaintiff Townsend was called in to a conference with the Dean of Students Tatierra Bivens, Defendant Krippinger, Defendant Graham, school counselor Rachel Graham, and Z.T.'s classroom's teacher's assistant and afterschool care provider Ms. Gamboa. The purpose of the meeting was to discuss Z.T.'s ripping a page in a school book and making scratches in his desk and a file cabinet.

21. The meeting quickly turned hostile. Krippinger made repeated and racist inferences that Z.T. was from a broken home despite both of Z.T.'s parents being together and actively involved in his life.

22. Krippinger admitted during this meeting that she was constantly telling Z.T. in front of his classmates that he needed to tell his mother to take him to therapy for mental challenges and anger issues and that he needed to be on psychotropic medication. Her messages to Z.T. were so constant that at one point on a vocabulary test, he wrote on the top "please take me to a therapist please", having been indoctrinated by her repeated messages to him suggesting that he was abnormal and that there was something wrong with him.

23. When Plaintiff Townsend stated that it was inappropriate of her to be making these statements and that she did not have the necessary qualifications to diagnose Z.T. with any

disorders, Krippinger's boyfriend, Defendant Graham interjected with accusations that Z.T. was dangerous due to his cartoon watching habits.

24. Townsend asked for any documentation showing that Z.T. had been having behavioral issues that year or any other school year and was informed that there had not been any issues with his behavior until the two weeks or so preceding the meeting.

25. During this meeting, both Graham and Krippinger complained of and were visibly annoyed with Z.T.'s disability, making statements as to how he would hold up other students during bathroom breaks or when putting on his coat or jacket because of his difficulty undoing/doing buttons and zippers.

26. When Townsend responded by acknowledging Z.T.'s disability and his challenges with his fine motor skills, Krippinger huffed and was dismissive.

27. Following this meeting, Townsend spoke with Z.T. and finally learned on June 2, 2019 of the abuse and mistreatment Z.T. was being subjected when Z.T. admitted to Townsend what had been taking place in the classroom and how it had prompted his actions with respect to damaging the school's property.

28. After Plaintiff Townsend learned of Z.T.'s circumstances in Krippinger's class, he visited the classroom with Z.T. on or about June 4, 2019 and witnessed firsthand Z.T.'s placement in the room as compared to the other schoolchildren. During this visit, Krippinger proudly stated to Townsend that Z.T. had begun giving his desk its own name and pretending he was part of a team.

29. Concerned for Z.T.'s welfare and heartbroken at the manner in which Krippinger was mistreating Z.T., Townsend visited the school on June 5, 2019 and asked to speak with various administrators including the principal, assistant principal, and dean, but was told that none were available.

30. On June 5, 2019, Townsend was able to speak with the school counselor, Rachel Graham. Graham then spoke with Krippinger and then informed Townsend that Krippinger

refused to allow Z.T. to sit at the grouped desks with the rest of the class, but that she had agreed to move him to a different, isolated area whereby he would be able to face his classmates and that Z.T. would have to "work his way back up to her good graces."

31. Due to Krippinger's abysmal treatment of Z.T., June 5, 2019 was Z.T.'s last day at Horizon. He has since been enrolled elsewhere. He continues to suffer from nightmares regarding his experience at Horizon.

32. Z.T.'s victimization at the hands of his teachers is ironic considering that in December 2018, Z.T. launched his own anti-bullying campaign in response to stories about children being bullied in schools.

## FACTS PERTAINING TO GRAHAM

33. In or about the end of May 2019, Z.T. was in the bathroom on a bathroom break. After he was finished using the facilities, he was in the process of dressing himself (which took him longer because of his disability) when Defendant Graham tired of waiting for him.

34. Without any legal justification, Graham grabbed Z.T. by the neck and dragged him out of the bathroom with his pants still down, exposing him in a state of undress to those nearby.

## COUNT I—EQUAL PROTECTION (Section 1983)
### (against Defendant Krippinger)

35. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

36. Z.T. had a clearly established right of equal access to all benefits and privileges of a public education and a right to be free from offensive harassment, discrimination, or bullying in school.

37. Defendants, under color of law, deprived Z.T. of the rights, privileges, and immunities afforded to him by the United States Constitution, including the right to equal protection under the Fourteenth Amendment.

38. Defendants violated Z.T.'s equal protection rights when they treated him differently than other similarly situated non-African American students without any compelling government interest.

39. Defendants violated Z.T.'s equal protection rights when they treated him differently than other similarly situated students without disabilities without any rational basis.

40. The above actions by Defendants were deliberate and intentional and exhibit deliberate indifference to and/or reckless disregard for Z.T.'s constitutional rights, in violation of his constitutional rights.

41. In the alternative, Z.T. was a class of one: there was no rational basis to justify the unequal treatment he faced, regardless of his membership in a protected class.

42. As a direct and proximate consequence of the Defendants' conduct, Z.T. suffered damages, including without limitation violations of his constitutional rights, mental anguish, humiliation, degradation, and pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT II—TITLE II OF THE ADA
**(against Defendant Concept Schools NFP)**

43. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

44. The actions of the Defendant as set forth hereto constitute a violation of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12131, *et seq*.

45. Due to Z.T.'s challenges with fine motor skills and the way in which this impacts his learning, Z.T. is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131.

46. Horizon Science Academy McKinley Park Charter School, operated by Defendant Concept Schools NFP, is a "public entity" as defined in 42 U.S.C. § 12131(1) and receives federal financial assistance so as to be covered by the mandate of the ADA.

47. Horizon Science Academy McKinley Park Charter School provides a facility whose operation constitutes a program and services for ADA purposes.

48. Accordingly, pursuant to 42 U.S.C. § 12132, no qualified individual with a disability shall be denied the benefits of the services, programs, or activities of a public entity.

49. Defendant acted with deliberate indifference to Z.T.'s known disability by failing to provide Z.T. with reasonable accommodations.

50. Specifically, Defendant Concept Schools NFP failed to accommodate Z.T.'s disability or make necessary modifications in his environment including ensuring equal or greater access to school supplies that would help to enhance his fine motor skills, commensurate with his unique and individualized needs, and he was therefore denied such benefits due to his disability, Defendant violated Z.T.'s rights pursuant to the ADA.

51. The harassment set forth herein was sufficiently severe and pervasive that it altered the conditions of Z.T.'s education and created an abusive educational environment.

52. As a direct and proximate consequence of the Defendant's conduct, Z.T. suffered damages, including without limitation mental anguish, humiliation, degradation, and pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award of reasonable compensatory damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT III—SECTION 504 OF THE REHABILITATION ACT
**(against Defendant Concept Schools NFP)**

53. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

54. The actions of the Defendant as set forth hereto constitute a violation of the Rehabilitation Act, 29 U.S.C. § 794.

55. Z.T. was an eligible disabled student and as such was entitled to a free appropriate public education from Defendant Concept Schools NFP and an equal opportunity to benefit from the public services. 29 U.S.C. § 705(20)(B); 34 C.F.R. Part 104.

56. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and its implementing regulations, require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice results in a qualified individual with a disability being excluded from the participation in, being denied the benefits of, or being subjected to discrimination under any program or activity receiving federal financial assistance, it violates Section 504.

57. Defendant's failure to ensure Z.T.'s well-being in an educational setting and allowance of a hostile learning environment perpetrated by Krippinger whereby he was discriminated against, excluded from equal participation in classroom activities, and denied the benefits of equal access to school supplies contributed to violating Z.T.'s rights under Section 504, as well as federal rules and regulations promulgated pursuant thereto.

58. As set forth herein, the abuse directed at Z.T. by Krippinger was directed at him because of his disability.

59. The harassment set forth herein was sufficiently severe and pervasive that it altered the conditions of Z.T.'s education and created an abusive educational environment.

60. Z.T. was denied his education and non-academic benefits and services by reason of his disability in violation of Section 504. 29 U.S.C. § 794(a).

61. As a direct and proximate consequence of the Defendant's conduct, Z.T. suffered damages, including without limitation mental anguish, humiliation, degradation, and pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendant for an award

of reasonable compensatory damages, plus attorneys' fees and costs, and such other and additional relief that this Court deems equitable and just.

### COUNT IV—FOURTH AMENDMENT - EXCESSIVE FORCE/UNLAWFUL SEIZURE
### (against Defendant Graham)

62. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

63. The actions of the Defendant as set forth hereto constitute a violation of Z.T., thus violating his 4th Amendment rights under the United States Constitution and 42 U.S.C. Section 1983.

64. The seizure of Z.T. by Graham in school was without any legal justification.

65. The actions of Defendant Graham as set forth hereto constitute unlawful seizure and excessive force.

66. Said actions of the Defendant were intentional, willful and wanton and committed with reckless disregard for Z.T.'s rights.

67. Said actions of the Defendant were objectively unreasonable under the circumstances.

68. As a direct and proximate consequence of the Defendant's conduct, Z.T. suffered damages, including without limitation violations of his constitutional rights, loss of liberty, mental anguish, humiliation, degradation, and pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Graham for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

### COUNT V—INDEMNIFICATION

69. Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

70. At all relevant times, Defendant Concept Schools NFP was the employer of the individual Defendants.

71. The individual Defendants committed the acts alleged above under the color of law and in the scope of their employment as employees of Concept Schools NFP.

72. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

73. As a proximate cause of the unlawful acts of the individual Defendants, which occurred within the scope of their employment, Z.T. was injured.

**WHEREFORE**, should any of the individual Defendants be found liable on one or more of the federal claims set forth above, Plaintiff demands, pursuant to 745 ILCS 10/9-102, that Defendant Concept Schools NFP be found liable for any compensatory judgment Plaintiff obtains against said individual Defendant(s), plus attorneys' fees and costs awarded and such other and additional relief that this Court deems equitable and just.

## JURY DEMAND

The Plaintiff requests a trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

Respectfully submitted,

/s/ Abby D. Bakos

Erickson & Oppenheimer, Ltd.
223 West Jackson Boulevard
Suite 200
Chicago, Illinois 60606
Telephone: (312) 327-3370
Email: abakos@eolawus.com